CLARENCE R. LITTLEFIELD *vs.* INHABITANTS OF WEBSTER.

Androscoggin.   Opinion April 15, 1897.

*Way.   Towns.   Notice.   R. S., c. 18, § 80.*

It is settled law in this State that the twenty-four hours actual notice by the municipal officers of a town or road commissioner of defect in the highway, whereby a traveler may recover damages for an injury received, must be of the identical injury itself. Notice of another defect, or of the existence of a cause likely to produce a defect, is not sufficient.

The words "actual notice" in the statute (R. S., c. 18, § 80,) signify something more than an opportunity to obtain notice by the exercise of due care and diligence. The facts and circumstances in a given case may justify the conclusion that the officers must have had actual notice unless grossly inattentive; but proof of gross inattention is not proof of actual notice.

The plaintiff obtained a verdict against the defendant town for a personal injury sustained by reason of a defective plank in the sidewalk. The written notice served on the town, after the injury, stated that the "defect and want of repair consisted of a board or plank in a sidewalk which had become rotten and decayed on the under side thereof, and unsafe for public travel." *Held;* that the verdict must be set aside, there being no evidence to show that the municipal officers or road commissioner of the town had twenty-four hours actual notice of such defect.

*Hurley* v. *Bowdoinham,* 88 Maine, 293, affirmed.

ON MOTION BY DEFENDANT.

The case appears in the opinion.

*D. J. McGillicuddy and F. A. Morey,* for plaintiff.

The municipal officers passed and repassed over the identical place of this defect day in and day out, and say themselves that they noticed the condition of the walk, that they saw it and had knowledge of it, but considered it safe and not defective. In *Hurley* v. *Bowdoinham,* 88 Maine, 293, the planks of the culvert were covered with two inches of dirt, and the selectmen might easily have gone over them and not been able to see the defective condition. Here the defect was plainly visible, so much so that the neighbors from across the street saw and observed it, as well as those passing and repassing on the sidewalk.

*F. L. Noble and R. W. Crockett,* for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-
HOUSE, STROUT, JJ.

WHITEHOUSE, J.  The plaintiff obtained a verdict of $616.66
as compensation for a personal injury alleged to have been sus-
tained by him on the 29th day of May, 1895, by reason of a defec-
tive plank in the sidewalk at Sabattus village.

The defendants ask to have the verdict set aside on the ground
that there is no evidence to show that the municipal officers or
road commissioner of the town had twenty-four hours actual notice
of such defect.

It is alleged in the plaintiff's declaration that, at a point in the
sidewalk about thirty-five feet north of Margaret Moody's house
and opposite Charles Mere's, was a plank or board that had become
rotten and incapable of sustaining the weight of a person, and that
when the plaintiff stepped on this plank it broke, letting a portion
of his body through the hole thus made, nearly three feet to the
ground, the end of the plank so broken striking him in the side.
The written notice served on the defendants by the plaintiff within
fourteen days after the injury stated that "said defect and want of
repair consisted of a board or plank in a sidewalk which had be-
come rotten and decayed on the under side thereof and unsafe for
public travel, and said sidewalk at that point was two and one-half
or three feet above the ground." The plaintiff's evidence tended
to support these allegations in the writ and notice.

The sidewalk in question was constructed of spruce and hemlock
planks four feet long laid crosswise on stringers. It was examined
in June, 1894, and all visible defects repaired. The plaintiff testi-
fied that prior to the accident he had been in the habit of passing
over the sidewalk, where the defective plank was alleged to be,
sometimes every day or every night and sometimes twice or three
times a week; that he never discovered anything on the upper side
to indicate that there was anything wrong there, that it looked to
be reasonably safe at that point and that he never saw anything to
suggest that it was defective.

Webb Hall, a witness, called by the plaintiff, testified that he

found a plank out of the sidewalk and lying in the street, but that this was north of the Meres house and not in front of it. When the plank that caused the accident was exhibited for his inspection, he stated unequivocally that it was not the plank found by him in the street, in regard to which he spoke to the road commissioner. He was afterward recalled and more definitely located the place in the sidewalk where the latter plank belonged. He had notified the commissioner once before that there was a plank out of the side-walk; the second one was about two rods above the place of the accident and the first one still farther up.

This is the only direct evidence in the case tending to show actual notice to the selectmen or road commissioners of a defective condition of the sidewalk at any point, and this is found to have no relevancy to the question in issue, for the reason that neither of the notices from Hall to the road commissioner referred to the defective plank in question, but both related to other and different defects located at a distance of two rods and one hundred feet respectively from the point of the accident.

It appears from the testimony of three other witnesses, called by the plaintiff, that in the spring of 1895, prior to the accident, some of the planks in the vicinity of the Meres house had become loose and been seen to tip up on several occasions; that one of the stringers near there appeared to be too unsound to hold nails, and that pieces of slabs had been nailed over the holes in some places. But there is no direct evidence that the plank in question had ever tipped up, or was known to be loose or that a slab had ever been nailed over any part of it. There is no testimony that either of these witnesses gave the road commissioner or selectmen any notice of the defects discovered by him, or ever had any interview with either of them in regard to the condition of the sidewalk. It does not appear that either of them ever gave any information in regard to the plank in question, or that either of them had any such information to give. It is clear that neither the road commissioner nor the selectmen ever received from these sources any actual notice of the particular defect which caused the injury.

It does appear, however, that the selectmen and road commis-

sioner had frequently passed over this sidewalk in the spring of 1895 prior to the accident; and inasmuch as actual notice is a conclusion of fact which may be established by circumstantial as well as direct evidence, it is strongly insisted by the learned counsel for the plaintiff, that if these officers had not been guilty of negligence in the discharge of their duties they would have derived actual notice of the defect in question and that they ought to be deemed to have had actual notice of it, from their personal observation of the walk in passing over it.

But it will be remembered that the defect complained of is described in the plaintiff's notice as a "plank rotten and decayed on the under side thereof and unsafe for public travel," and that it is expressly admitted in the testimony of the plaintiff, who lived within two rods of one of the termini of the sidewalk, that there was nothing in the appearance of the upper side of the planking at the point in question to indicate the existence of a defect there. Twelve credible witnesses for the defendants state, in substance, that they had occasion to pass over the walk before the accident, and that it had the appearance of a sound and smooth sidewalk, with nothing to suggest the concealed defect at the point of the accident. The selectmen and road commissioners expressly deny that they ever in fact had any personal knowledge of the rotten condition of the plank which the plaintiff broke through, and there is no direct evidence that either of them ever did have any such knowledge. It only appears that, in view of the elevation of the sidewalk above the ground, the road commissioner without extraordinary exertion might have made a thorough examination of the stringers and of the under side of the walk, and thus discovered the actual condition of the planking at the place of the accident. But as stated in the case of *Hurley* v. *Bowdoinham*, 88 Maine, 293, which this case closely resembles, "the words actual notice in this statute signify something more than an opportunity to obtain notice by the exercise of due care and diligence. The facts and circumstances in a given case may justify the conclusion that the officer must have had actual notice unless grossly inattentive; but proof of gross inattention is not proof of actual notice."

As stated in *Smyth* v. *Bangor*, 72 Maine, 249, "the notice must be of the defect itself, of the identical defect which caused the injury. Notice of another defect, or of the existence of a cause likely to produce a defect, is not sufficient."·

*Motion sustained.*