488 P.2d 298

Sam C. RUDD, Plaintiff and Respondent,

**v.**

CROWN INTERNATIONAL, formerly
Crown Industries and Crown Development
Company, Defendant and Appellant.

OGDEN IMPERIAL "400" MOTEL, INC.,
et al., Intervenor Plaintiffs,

**v.**

Sam C. RUDD et al., Intervenor Defendants.

No. 12281.

Supreme Court of Utah.

Aug. 16, 1971.

Ronald C. Barker, Salt Lake City, for appellant.

Victor G. Sagers, Midvale, for respondent.

George Latimer and LeRoy S. Axland, Salt Lake City, for intervenor plaintiffs.

CALLISTER, Chief Justice:

Plaintiff, a Utah resident, as vendor, entered into a contract of sale of a motel, consisting of 37 units together with all of its equipment, situated in Ogden, Utah, with defendant, a foreign corporation, as vendee. The date of the contract was September 30, 1969, and the purchase price was $260,-000. The vendee agreed to assume and pay certain contract obligations and to hold the vendor harmless for any payment thereof. The vendee covenanted to pay all of the 1969 property taxes and those of subsequent years and to transfer certain shares of corporate stock to vendor. The contract further provided that in the event of failure of the vendee to make any of the payments on the contracts assumed, when any of the payments became due or within 30 days thereafter, the vendor should have the right, after serving notice to the vendee to remedy the default, to have the contracts reassigned to him and to have any and all payments previously paid by the vendee forfeited to the vendor as liquidated damages. The vendor was further granted the right to re-enter and take possession of the premises.

Plaintiff filed his complaint in February 1970, alleging the defendant had breached the contract, specifically that defendant had failed to discharge the indebtedness under the contracts it had assumed and had not surrendered the shares of corporate stock as provided in the contract of sale. Plain-

tiff had been compelled to make payments on the contracts and to pay the 1969 property taxes to protect his interest in the motel. Plaintiff prayed for restitution of the premises, for a reassignment of the contracts which defendant had assumed, for a determination that defendant had no right, title or interest in the property, and for a reasonable attorney's fee as provided in the contract.

Plaintiff alleged that the District Court of Salt Lake County, State of Utah, had jurisdiction under the terms of the contract and under Section 16–10–13, U.C.A. 1953. Plaintiff served process upon the Secretary of State and upon the resident manager of the motel. The contract between the parties provided:

It is mutually understood and agreed by the parties hereto that any notice to be given in connection with this agreement may be given to the Seller at his residence in Salt Lake County and to the purchaser at the address of the motel, the subject of this agreement. Litigation, if any, may be instituted and prosecuted in the District Court of Salt Lake County, State of Utah, and both parties hereby consent to said jurisdiction.

Defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted or in the alternative to quash the service of summons on the grounds (a) that defendant was a Nevada corporation and was not subject to suit or service in Utah and (b) that defendant had not been properly served with process.

Upon hearing, defendant's motion to quash was denied; upon trial of the action, judgment was awarded to plaintiff.

On appeal, defendant contends that plaintiff failed to serve process in accordance with the procedures authorized by law and consequently the trial court did not acquire jurisdiction. Defendant states that it is a Nevada corporation, not qualified to transact business in Utah, that its principal place of business is in Hayward, California, and that the sole business it transacted within this jurisdiction was the purchase and subsequent leasing of the motel. Defendant asserts that the sole basis upon which the jurisdiction of the courts of Utah can be grounded is the long-arm statute (Sections 78–27–22 through 78–27–28, U.C.A.1953, as amended 1969), and that thereunder process must be served personally upon defendant out of state, Section 78–27–25, or upon an agent of defendant within the state as provided in Rules 4(e) (4) or 4(f) (2), U.R.C.P. Defendant claims that service upon the Secretary of State was invalid because this procedure is authorized only when a foreign corporation is transacting business within the state and has failed to appoint a registered agent, Section 16–10–13, U.C.A.1953. On the other hand, defendant contends that the serv-

ice upon the resident manager of the motel was invalid because he was an employee of defendant's lessee.

Since the facts revealed in the record are insufficient to establish the status of the manager of the motel as well as the existence of the alleged lease agreement, this opinion will be confined to the issue of the service upon the Secretary of State.

Service of summons upon the Secretary of State, as agent of a foreign corporation transacting business in the State of Utah which has failed to appoint a process agent, is a valid service to which the defendant must respond. [1]

Defendant concedes that under the long-arm statute its activities within the state are sufficient to confer jurisdiction upon the courts, Section 78–27–24(1), (4), U.C.A. 1953, as amended 1969. The dispute concerns the method of serving process, and, in particular, the last sentence in Section 78–27–25: "Nothing contained in this act shall be construed to limit or affect the right to serve process in any other manner provided by law." Defendant insists that this provision may not be construed to include service of process on the Secretary of State, which to confer jurisdiction requires "doing business" within this state, while the criterion of Section 78–27–22, is "certain significant minimal contacts with this state."

In the recent case of Hill v. Zale Corporation,[2] this court stated:

If there is any difference between what is stated as the "doing business" and the "minimal contacts" tests it is probably more in semantics than in substance. In practical application they are essentially the same * * *.

■ Another aspect of significance is whether, notwithstanding the provisions of the long-arm statute, the defendant would be amenable to process and the jurisdiction of the courts of this state. A case in point is Long v. Mishicot Modern Dairy, Inc.,[3] wherein a foreign corporation sought to quash service of summons (which was made upon the Secretary of State) on the ground that the corporation was not doing business within the State of California.

The court observed that the reach of the "doing business" requirement had been equated with the limits of the due process requirement as defined in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), that is, the foreign corporation must have certain minimum contacts with the forum so that the

1. Prudential Federal Savings & Loan Assn. v. William L. Pereira and Associates, 16 Utah 2d 365, 369, 401 P.2d 439 (1965).

2. 25 Utah 2d 357, 360, 482 P.2d 332, 334 (1971).

3. 252 Cal.App.2d 425, 60 Cal.Rptr. 432, 435, 436 (1967).

maintenance of the suit does not offend traditional notions of fair plan and substantial justice. The court stated:

> In determining what "minimum contacts" are sufficient, a distinction must be drawn between a cause of action arising out of or related to activity within the state and one not so related. In the latter instance, more extensive contacts are required. [Citations]

> Thus, although mere ownership of land may not be sufficient to subject a non-resident to personal jurisdiction in an unrelated cause of action, it may be sufficient if the cause of action is related to such ownership. [Citation]

> Where the cause of action arises out of economic activity within the forum state, the contacts need not consist of repeated or continuous business transactions. (McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Goodrich, Conflict of Laws, supra, (4th ed.) § 76, p. 135.) An isolated transaction may be sufficient * * *.

The court observed that under the McGee case it is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state. The court held that defendant was amenable to personal jurisdiction, citing the following factors:

* * * Plaintiff is a resident of this state; the action arises out of a contract, made and to be performed in this state, for the sale of land located in this state; defendant has availed itself of the privilege of engaging in economic activity in this state and has enjoyed the benefits and invoked the protection of its laws, administrative agencies and courts; California law will determine the rights and obligations of the parties under the contract sued upon [Citations]; and the documentary evidence and witnesses are in this state. In these circumstances, it is reasonable that the lawsuit be adjudicated in this state. "Fair play and substantial justice" are not offended by requiring defendant to respond to the instant action.

In the instant action, the trial court did not commit error by its denial of defendant's motion to quash.

Defendant further asserts that the trial court erred in its denial of a motion for change of venue. Defendant's first appearance was at the time it filed its motion to dismiss or to quash the return of summons on March 13, 1970. Defendant's motion for a change of venue was not filed until June 25, 1970.

■ Section 78-13-8, U.C.A.1953, requires a defendant to file a motion for change of venue at his first appearance.

Making any other motion or appearance prior thereto, usually forecloses defendant from thereafter objecting to venue.[4]

During May 1970, plaintiff petitioned the court for appointment of a receiver. Upon due notice, a hearing was held, and a receiver was appointed. Subsequently, defendant filed a motion to vacate the appointment of the receiver, which upon hearing, the trial court denied; defendant claims error.

■ An application to vacate the appointment of a receiver is addressed to the sound discretion of the court,[5] and defendant has not indicated facts to support an abuse of that discretion. The matters asserted were within the knowledge of defendant at the time of the initial hearing, and defendant is precluded by the doctrines of waiver and estoppel from subsequently objecting to irregularities in the appointment of a receiver.[6] Furthermore, the trial court did not commit error by vacating an order erroneously granting Utah Imperial the right to file an action collaterally attacking the appointment of the receiver.[7]

■ Finally, defendant challenges the reasonableness of the sum of $10,000, as found by the trial court in the award of attorney's fees. The evidence as testified to by the plaintiff indicates that plaintiff's counsel originally agreed to work for $35 per hour; as the action progressed, and the motions and hearings multiplied, the fee was raised to $5,000 and ultimately to $10,000. Defendant claims that counsel is limited to $35 per hour and that there was no evidence as to the exact number of hours so devoted; and, therefore, there is insufficient evidence to support the sum awarded. This argument is without merit.

* * * The question of what is a reasonable attorney's fee in a contested matter is not necessarily controlled by any set formula. What is reasonable depends upon a number of factors, the amount in controversy, the extent of services rendered and other factors which the trial court is in an advantaged position to judge.[8]

The judgment of the trial court is affirmed; costs are awarded to plaintiff.

TUCKETT, HENRIOD, ELLETT and CROCKETT, JJ., concur.

4. Cannon v. Tuft, 3 Utah 2d 410, 413, 285 P.2d 843 (1955) ; Pace v. Wolfe, 76 Utah 368, 372, 289 P. 1102 (1930).

5. 75 C.J.S. Receivers § 82, p. 729.

6. 75 C.J.S. Receivers § 90, pp. 734–735.

7. 75 C.J.S. Receivers § 89, pp. 732–733.

8. Wallace v. Build, Inc., 16 Utah 2d 401, 405, 402 P.2d 699 (1965).